# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | |
|---|---|
| ROBERT DEAN WILKES, Administrator of the Estate of LELA ANN SMITH, | )<br>)<br>) |
| Plaintiff, | )  **MEMORANDUM OPINION** |
| | )  **AND RECOMMENDATION** |
| v. | ) |
| | )  1:09CV505 |
| LEE COUNTY NURSING AND REHABILITATION CENTER, LLC, | )<br>) |
| Defendant. | ) |

This matter is before the court on a motion to dismiss (docket no. 6) by Defendant Lee County Nursing and Rehabilitation Center, LLC (hereinafter referred to as Defendant or "the Center"). Plaintiff has responded in opposition to the motion. In this posture, the matter is ripe for disposition. The parties have not consented to the jurisdiction of the magistrate judge; therefore, the motion must be dealt with by way of recommendation. For the following reasons, it will be recommended that the court deny Defendant's motion to dismiss in that the court should dismiss the case, but without prejudice to Plaintiff to refile.

**BACKGROUND AND FACTS**

In this case, Plaintiff Robert Wilkes, the administrator for the Estate of Lela Ann Smith,[1] claims damages related to personal injuries incurred by Smith while she

---

[1] The complaint indicates that Smith died on April 14, 2009. (Compl. ¶ 1.)

was a patient at the Center in May 2007. (Compl. ¶¶ 15-16, 20-22.) The complaint alleges that Smith suffered from Alzheimer's, was frequently disoriented while at the Center, and that staff at the Center knew about these mental impairments. (*Id.* ¶¶ 13-14.) More specifically, the complaint alleges that when Smith was admitted to the Center in April 2007, the Center was given an evaluation of Smith's competency prepared by a psychologist, noting in part that Smith "demonstrates significant decreases in both her ability to retain and recall verbal information and her problem-solving abilities. Consequent to this, the patient is seen as lacking sufficient capacity to make and to communicate important decisions regarding her person or property." (*Id.* ¶ 13.)

On May 1, 2007, Smith told staff that she would be "leaving tonight with my daughter." (*Id.* ¶ 15.) Staff members gave Smith Xanax at 8 p.m. that night "for constantly talking about leaving the facility." (*Id.*) On May 3 and May 5, staff members noted that Smith stayed in her room with the door closed. (*Id.*) On May 8, Smith removed the window pane in her room, pushed the screen from the window, and fell onto the ground below. (*Id.* ¶ 16.) Smith suffered, among other injuries, a broken hip requiring surgery. (*Id.* ¶¶ 16-17.)

Here, Plaintiff seeks to make the Center liable for Smith's injuries as a result of the fall from her window. Plaintiff alleges that the Center was negligent in that it breached its "duty of care to supervise [Smith], provide a reasonably safe environment for her, and implement and follow a care plan to prevent injury to her."

(*Id.* ¶¶ 20-21.)  Plaintiff further alleges that the Center committed the following acts and/or omissions of negligence, among others: the Center "[f]ailed to adequately supervise Mrs. Smith"; "[f]ailed to develop and implement a care plan which would adequately address Mrs. Smith's needs"; and "[f]ailed to reassess or amend Mrs. Smith's care plan to address her statements that she planned to leave [the Center]." (*Id.* ¶ 22.)  Plaintiff alleges that the Center is liable for the following costs borne by and injuries sustained to Plaintiff: pain and suffering, mental anguish and emotional distress, medical and related expenses, disruption of activities of daily living and enjoyment of life, and disruption and limitation of mobility.

On September 8, 2009, the Center filed the pending motion to dismiss.  The Center asserts that dismissal is required because Plaintiff failed to submit a medical malpractice certification in accordance with Rule 9(j) of the North Carolina Rules of Civil Procedure.

**STANDARD OF REVIEW**

In ruling on a motion to dismiss for failure to state a claim, it must be recalled that the purpose of a 12(b)(6) motion is to test the sufficiency of the complaint, not to decide the merits of the action.  *Schatz v. Rosenberg*, 943 F.2d 485, 489 (4th Cir. 1991); *Food Lion, Inc. v. Capital Cities/ABC, Inc.*, 887 F. Supp. 811, 813 (M.D.N.C. 1995).  At this stage of the litigation, a plaintiff's well-pleaded allegations are taken as true, and the complaint, including all reasonable inferences therefrom, are

liberally construed in the plaintiff's favor. *McNair v. Lend Lease Trucks, Inc.*, 95 F.3d 325, 327 (4th Cir. 1996).

The duty of fair notice under Rule 8(a), however, requires the plaintiff to allege, at a minimum, the necessary facts and grounds that will support his right to relief. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). As the Supreme Court has instructed, although detailed facts are not required, "a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.* (internal citation omitted). *See also Ashcroft v. Iqbal*, 129 S. Ct. 1937 (2009) (clarifying *Twombly*). With these principles in mind, the court now turns to the motion to dismiss.

**DISCUSSION**

<u>Medical Malpractice Cases and the Rule 9(j) Certification Requirement in North Carolina</u>

Under North Carolina law, a "medical malpractice" action is defined as "a civil action for damages for personal injury or death arising out of the furnishing or failure to furnish professional services in the performance of medical, dental, or other health care by a health care provider." N.C. GEN. STAT. § 90-21.11. The North Carolina Court of Appeals has defined "professional services" as an act or service "arising out of a vocation, calling, occupation, or employment involving specialized knowledge, labor, or skill, and the labor [or] skill involved is predominantly mental or intellectual,

4

rather than physical or manual." *Lewis v. Setty*, 130 N.C. App. 606, 608, 503 S.E.2d 673, 674 (1998) (quoting *Smith v. Keator*, 21 N.C. App. 102, 105-06, 203 S.E.2d 411, 415 (1974) (internal quotation omitted)). The distinction between medical malpractice actions and ordinary negligence actions is important because in medical malpractice actions plaintiffs must comply with the certification requirements of Rule 9(j) of the North Carolina Rules of Civil Procedure. N.C. GEN. STAT. § 1A-1, Rule 9(j). Rule 9(j) provides, in relevant part:

> [a]ny complaint alleging medical malpractice by a health care provider as defined in G.S. 90-21.11 in failing to comply with the applicable standard of care under G.S. 90-21.12 shall be dismissed unless:
>
> (1) The pleading specifically asserts that the medical care has been reviewed by a person who is reasonably expected to qualify as an expert witness under Rule 702 of the Rules of Evidence and who is willing to testify that the medical care did not comply with the applicable standard of care;
>
> (2) The pleading specifically asserts that the medical care has been reviewed by a person that the complainant will seek to have qualified as an expert witness by motion under Rule 702(e) of the Rules of Evidence and who is willing to testify that the medical care did not comply with the applicable standard of care, and the motion is filed with the complaint; or
>
> (3) The pleading alleges facts establishing negligence under the existing common-law doctrine of res ipsa loquitur.

N.C. GEN. STAT. § 1A-1, Rule 9(j).

The North Carolina courts have addressed what types of allegations against a health care provider constitute "medical malpractice" claims, which require expert testimony such as that set forth in Rule 9(j), as opposed to ordinary negligence

claims, which do not require expert testimony. For instance, in *Norris v. Rowan Memorial Hospital, Inc.*, a hospital patient was injured when she attempted to get out of her hospital bed and fell on the floor. 21 N.C. App. 623, 626, 205 S.E.2d 345, 346 (1974). The plaintiff alleged that the defendant breached its duty to care for the patient's safety by "failing to raise the bed rails on [the patient's] bed and in failing to instruct her to use the bedside call button to obtain assistance in going to the bathroom." *Id.* at 626, 205 S.E.2d at 348. The *Norris* court found that no expert testimony was required, observing that a hospital's "duty to exercise due care for the safety of its patients" is independent of the hospital's "professional" services and does not necessarily implicate a malpractice claim. *Id.* The *Norris* court further stated that "[w]here . . . the alleged breach of duty [does] not involve the rendering or failure to render professional nursing or medical services requiring special skills, expert testimony . . . is not necessary to develop a case of negligence for the jury." *Id.*

Next, in *Lewis v. Setty*, the plaintiff was injured while being moved from an examination table to a wheelchair. 130 N.C. App. 606, 608, 503 S.E.2d 673, 674 (1998). The North Carolina Court of Appeals specifically held that no Rule 9(j) certification was required, concluding that the alleged negligent conduct was "predominately a physical or manual activity" which did not implicate the defendant's professional services. *Id.* Similarly, in *Taylor v. Vencor, Inc.,* a nursing home patient with mental and physical disabilities died as a result of burns sustained when she

6

attempted to light a cigarette and caught her nightgown on fire. 136 N.C. App. 528, 529, 525 S.E.2d 201, 202 (2000). The administrator of the patient's estate brought a wrongful death action against the nursing home, alleging that the nursing home failed "through inadequate staffing and other negligent behavior, to provide adequate observation and supervision while [the patient] smoked cigarettes." *Id.* The *Taylor* court held that a Rule 9(j) certification was not required, stating that "the observance and supervision of the plaintiff, when she smoked in the designated smoking area, did not constitute an occupation involving specialized knowledge or skill." *Id.* at 530, 525 S.E.2d at 203. The court further observed that "[p]reventing a patient from dropping a match or a lighted cigarette upon themselves, while in a designated smoking room, does not involve matters of medical science." *Id.*

In contrast to *Norris*, *Lewis*, and *Taylor*, the North Carolina Court of Appeals in *Sturgill v. Ashe Memorial Hospital, Inc.* found that a Rule 9(j) certification *was* required where the plaintiff alleged that the defendant should have medicated or restrained the patient. 186 N.C. App. 624, 652 S.E2d 302 (2007). In *Sturgill,* the plaintiff, the administrator of the patient's estate, alleged that the hospital's lack of restraints on the patient caused the patient's fall and resulting injuries. *Id.* at 629-30, 652 S.E.2d at 306. The *Sturgill* court concluded that the case was one for medical malpractice because the decision to apply restraints on a patient was "a medical decision requiring clinical judgment and intellectual skill," which is a professional

7

service. *Id.* at 630, 652 S.E.2d at 306. Thus, the court found that a Rule 9(j) certification was required. *Id.* at 631, 652 S.E.2d at 306.

Here, it is undisputed that Plaintiff did not submit a Rule 9(j) certification with the complaint. The Center contends that Plaintiff is bringing a medical malpractice action against the Center because Plaintiff is alleging that the Center failed to comply with its duty of care in rendering professional services and that Plaintiff was therefore required to submit a Rule 9(j) certification with the complaint. The Center cites the following as specific allegations in the complaint referencing medical decisions requiring clinical judgment and intellectual skill: (1) Smith was given Xanax at 8 p.m. for constantly talking about leaving the facility; (2) the Center "owed [Smith] a duty of care to . . . implement and follow a care plan to prevent injury to her"; and (3) the Center "failed to implement a care plan which would have adequately addressed Mrs. Smith's needs; [and] [f]ailed to reassess or amend Mrs Smith's care plan to address her statements that she planned to leave the Lee County Nursing and Rehab." Defendant contends that because development, implementation, assessment, and amendment of a care plan are all medical decisions requiring clinical judgment and intellectual skill, these are professional services, thus triggering the Rule 9(j) certification requirement.

In response, Plaintiff contends that Rule 9(j) certification is not required because this is not a medical malpractice case in that Plaintiff did not allege a failure to adequately perform professional services. Rather, Plaintiff contends that the

8

complaint's allegations–that Defendant failed to adequately supervise Smith, failed to prevent her from leaving the facility, and failed to prevent her from injuring herself in an attempt to leave the facility–all relate to physical actions not requiring specialized medical skill and therefore they are governed by ordinary negligence and Rule 9(j) does not apply. Plaintiff has asked the court, alternatively, to allow for a voluntary dismissal so that he may refile his complaint with the Rule 9(j) certification, or for Plaintiff to be allowed to amend the complaint to include the Rule 9(j) certification.[2]

I agree with Defendant that the allegations in the complaint can be reasonably read to allege a claim for medical malpractice, thus triggering the Rule 9(j) certification requirement. That is, Plaintiff alleges here that Defendant's negligence arose in part because of its failure to "implement a care plan" that would address Smith's needs given her Alzheimer's and dementia. These allegations relate to concerns about medical decisions requiring clinical judgment and intellectual skill, as in *Sturgill*, as opposed to mere observation and supervision, as in *Norris*, *Lewis*, and *Taylor*. Because Plaintiff did not submit the requisite Rule 9(j) certification, dismissal of the complaint is required. *See* N.C. GEN. STAT. § 1A-1, Rule 9(j) (requiring dismissal absent the Rule 9(j) certification). The court should, however, dismiss the case without prejudice so that Plaintiff may refile the complaint with the

---

[2] Plaintiff contends, and Defendant does not dispute, that if Plaintiff is given time to refile, his new complaint will not be barred by the statute of limitations; thus, allowing Plaintiff to refile would not be futile.

requisite Rule 9(j) certification. *See Thigpen v. Ngo*, 355 N.C. 198, 202, 558 S.E.2d 162, 165 (2002) ("When acting pursuant to Rule 9(j), trial judges, with their unique perspective, have the discretion to dismiss without prejudice if they see fit.").

**CONCLUSION**

For the foregoing reasons, **IT IS RECOMMENDED** that the court dismiss this case *without* prejudice to Plaintiff to refile the complaint with the requisite Rule 9(j) certification. To this extent, Defendant's motion to dismiss *with* prejudice (docket no. 6) should be **DENIED**.

_____
WALLACE W. DIXON
United States Magistrate Judge

Durham, NC
February 24, 2010